IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



THOMAS EBRON,

    Petitioner,

v.                                          Civil Action No. 3:17CV143

KAREN D. BROWN, et al.,

    Respondent.

**REPORT AND RECOMMENDATION**

Thomas Ebron, a Virginia state prisoner proceeding pro se, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1). The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). Respondent moves to dismiss, inter alia, on the ground that the one-year statute of limitations governing federal habeas petitions bars the § 2254 Petition. (ECF No. 13, at 3-8.) Ebron has responded. (ECF No. 15.) For the reasons set forth below, it is RECOMMENDED that the Motion to Dismiss (ECF No. 11) be GRANTED.

**A. Procedural History**

On October 15, 1985, Ebron pled guilty to capital murder, robbery, and a firearm violation in the Circuit Court for the City of Alexandria ("Circuit Court"). Plea Agreement 2, Commonwealth v. Ebron, No. F-7291 (Va. Cir. Ct. filed Oct. 15, 1985). On December 16, 1985, the Circuit Court sentenced Ebron

to life imprisonment plus two years. Judgment 2, <u>Commonwealth v. Ebron</u>, No. F-7291 (Va. Cir. Ct. Dec. 16, 1985). Ebron neither appealed nor fild a petition for a writ of habeas corpus.

In March 2016, Ebron was denied parole by the Virginia Parole Board ("VPB") on the following grounds:

- Crimes committed - Homicide-Capital; Robbery; Weapon Offense
- Extensive criminal record
- History of violence
- Release at this time would diminish seriousness of crime
- Serious nature and circumstances of your offense(s).[1]

On February 15, 2017, Ebron filed the instant § 2254 Petition. Ebron raises four claims for relief.[2] Specifically,

Claim One    "Ebron claims that he was unlawfully and unconstitutionally sentenced . . . where the sentence was imposed after a review of his juvenile criminal history, in a [Presentence Investigation Report ("PSR")] he had no knowledge of, in violation of his right to due process . . . creating a miscarriage of justice." (Br. Supp. § 2254 Pet. 4, ECF No. 2.)

Claim Two    "Ebron claims that the Circuit Court . . . did not have subject matter or personal jurisdiction for which to prosecute him, and did do in violation of the Interstate Agreement on Detainers Act's Anti[-]Shuttling

---

[1] <u>See</u> https://vpb.virginia.gov/parole-decisions/ (under "2016" select the hyperlink for "March;" scroll down to page six to find "Ebron, Thomas").

[2] The Court corrects the punctuation and spelling in the quotations from Ebron's submissions.

2

|              | |
|--------------|---|
|              | Provision, creating a miscarriage of justice." (<u>Id.</u>) |
| Claim Three  | "Ebron claims that he was denied effective assistance of counsel in violation of the Sixth Amendment where his trial attorney knew that a [PSR] was made, pursuant to an investigation and Ebron was not informed, and, that the [Interstate Agreement on Detainers] was violated prior to trial creating a miscarriage of justice." (<u>Id.</u> at 4-5.) |
| Claim Four   | "Ebron claims that he has been unlawfully denied parole, where the [VPB] has reviewed and relied upon information in his file to deny him parole (pre-sentence report), creating a miscarriage of justice." (<u>Id.</u> at 5.) |

As explained below, Ebron's Claim Four lacks merit and his remaining claims are barred by the statute of limitations.

**B. Analysis**

    **1. Claim Four Lacks Merit**

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. <u>See</u> <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 569-70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest. <u>Beverati v. Smith</u>, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). Where government action impacts a protected liberty interest, the second step is to determine "what process is due" under the circumstances. <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481

3

(1972) (observing that "due process is flexible . . . not all situations calling for procedural safeguards call for the same kind of procedure").

A liberty interest may arise from the Constitution itself, or from state laws and policies. Wilkinson v. Austin, 545 U.S. 209, 220-21 (2005). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). "With no constitutional right to parole per se, federal courts recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996) (quoting Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991)).

The United States Court of Appeals for the Fourth Circuit consistently has found that the pertinent Virginia statutes fail to create a protected liberty interest in release on parole. See Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012) (citing Gaston, 946 F.2d at 344; Vann, 73 F.3d at 522. Virginia, however, has created a limited liberty interest in consideration for parole. Burnette v. Fahey, No. 3:10CV70, 2010 WL 4279403, at *8 (E.D. Va. Oct. 25, 2010); Burnette, 687 F.3d at 181. "The question thus becomes what procedures are required under the Due Process Clause in [considering] an inmate for discretionary

4

release on parole." Burnette, 2010 WL 4279403, at *8 (quoting Neal v. Fahey, No. 3:07cv374, 2008 WL 728892, at *2 (E.D. Va. Mar. 18, 2008)).

The Fourth Circuit has stated that the Constitution requires only a very limited amount of process in considering an inmate for parole. Specifically, "[a]t most, . . . parole authorities must furnish to the prisoner a statement of its reasons for denial of parole." Burnette, 687 F.3d at 181 (alteration and omission in original) (citation omitted) (internal quotation marks omitted). "So long as the statement provides a valid ground for denying parole, the federal courts cannot, under the guise of due process, demand more from the state." Burnette, 2010 WL 4279403, at *8 (citation omitted). Moreover, "where the denial of parole . . . rests on one constitutionally valid ground, the Board's consideration of an allegedly invalid ground would not violate a constitutional right." Bloodgood v. Garraghty, 783 F.2d 470, 475 (4th Cir. 1986) (citing Zant v. Stephens, 462 U.S. 862 (1983)).

Here, the VPB provided Ebron with a statement of its reasons for denying him parole. These reasons included: the seriousness of his offense, his extensive criminal record, his history of violence, and because his release would diminish the seriousness of his crime. Ebron argues that the VPB's reliance on his PSR, which he asserts wrongly includes information about

5

his juvenile criminal history, was inappropriate. (Br. Supp. § 2254 Pet. 3, 5.) The Court construes Ebron to argue that the VPB's reliance on Ebron's "extensive criminal record" was an invalid ground for denying him parole because it included consideration of his juvenile criminal history. (See id.) However, Ebron fails to allege, much less demonstrate, that the other reasons cited by the VPB for denying parole were invalid. See Bloodgood, 783 F.2d at 475. In comparable circumstances, the Fourth Circuit has "concluded that the parole board gave constitutionally sufficient reasons when it informed the prisoner that he was denied parole release because of 'the seriousness of [his] crime' and his 'pattern of criminal conduct.'" Burnette, 2010 WL 4279403, at *8 (alteration in original) (quoting Bloodgood, 783 F.2d at 472, 474). In Ebron's case, even excluding the VPB's reliance on Ebron's "extensive criminal record," the VPB offered other reasons for its denial of parole that Ebron does not contest. Therefore, Ebron has received all of the process that the Constitution requires, and he fails to state a claim for relief for the denial of due process. Accordingly, it is RECOMMENDED that Claim Four be DENIED.

2. **Statute Of Limitations**

Respondent contends that the federal statute of limitations bars Claims One through Three. (Mot. Dismiss 3-8.) Section 101

6

of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

> 1. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> 2. The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### a. Commencement And Running Of The Statute Of Limitations

Ebron's judgment was entered on December 16, 1985—before the effective date of the AEDPA. The United States Court of Appeals for the Fourth Circuit has held that prisoners whose convictions became final prior to the effective date of the AEDPA had until April 24, 1997 to file their § 2254 petition. Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 1998). Therefore, Ebron had until April 24, 1997 to file the instant § 2254 Petition. Ebron's § 2254 Petition was filed nearly twenty years too late. Thus, the statute of limitations bars Ebron's § 2254 Petition.

Nonetheless, Ebron argues that he is entitled to a belated commencement of the limitations period pursuant to 28 U.S.C. § 2244(d)(1)(D). (See Br. Supp. § 2254 Pet. 8; Resp. 6.) Ebron also argues that his § 2254 Petition is subject to equitable tolling so as to excuse compliance with the statute of limitations. (Resp. 6.) The Court will consider each in turn.

### b. Belated Commencement Under 28 U.S.C. § 2244(d)(1)(D)

In his § 2254 Petition, Ebron explains that he was "sentenced under Virginia's old law" and as a result, he is reviewed annually by the VPB for parole. (Br. Supp. § 2254 Pet. 3.) Ebron has been denied parole by the VPB sixteen times. (Id.) Ebron further states that,

8

> Due to the number of parole denials he has received, Ebron sought aid from other offenders at Deerfield [Correctional Center] in order to discover if there was anything in his institutional and/or criminal file . . . that would cause the [VPB] to continuously deny him parole. Ebron was advised to request to review his files . . . .
> Upon inspection of his files, Ebron discovered a [PSR], which included his juvenile criminal history. . . .

(Id. at 3.) Ebron further explains,

> [T]he Court has a situation where a petitioner has had no knowledge of information contained in his file, information that he should have been provided at least ten (10) days prior to trial and sentencing, which contained his juvenile record, a record that was supposed to have been sealed.

(Id. at 8.)

Whether a petitioner has exercised due diligence to warrant a belated commencement of the limitation period pursuant to 28 U.S.C. § 2244(d)(1)(D) is a fact-specific inquiry unique to each case. See Wims v. United States, 225 F.3d 186, 190-91 (2d Cir. 2000). A petitioner bears the burden to prove that he or she exercised due diligence. DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006). Due diligence "at least require[s] that a prisoner make reasonable efforts to discover the facts supporting his claims." Anjulo-Lopez v. United States, 541 F.3d 814, 818 (8th Cir. 2008) (citing Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002)). A habeas applicant who "merely alleges that [he or she] did not actually know the facts underlying his or her claim does not" thereby demonstrate due

9

diligence. In re Boshears, 110 F.3d 1538, 1540 (11th Cir. 1997). Rather, to obtain a belated commencement of the limitation period, the applicant must explain why a reasonable investigation would not have unearthed the facts prior to the date on which his conviction became final. See id. at 1540-41 (rejecting petitioner's assertion that he could not have discovered his new Brady[3] claim prior to filing his first § 2254 petition). Moreover, in evaluating a petitioner's diligence, the Court must be mindful that the "statute's clear policy calls for promptness." Johnson v. United States, 544 U.S. 295, 311 (2005).

Ebron's argument for belated commencement is unavailing because he fails to detail how he made reasonable efforts to discover the facts he now relies on to support his claims. Essentially, Ebron argues that he did not learn of the facts underlying his claims until he spoke with fellow inmates and began requesting and receiving copies of his parole file, which included a copy of his PSR, from the VPB. But Ebron does not explain why he was unable to obtain this allegedly claim-essential document before April 24, 1997.

A review of the state court record reveals that Ebron requested copies of his PSR and other various documents from the Circuit Court at least twice, in April and October of 1986.

---

[3] Brady v. Maryland, 373 U.S. 83 (1963).

Letter, Commonwealth v. Ebron, No. F-7291 (Va. Cir. Ct. filed April 29, 1986); Letter, Commonwealth v. Ebron, No. F-7291 (Va. Cir. Ct. filed Oct. 1, 1986). The record further reveals that on at least two separate occasions, the Clerk of the Circuit Court sent Ebron copies of his Indictment, Trial Order, and Sentencing Order. Commonwealth v. Ebron, No. F-7291 (Va. Cir. Ct. Feb. 12, 1987); Commonwealth v. Ebron, No. F-7291 (Va. Cir. Ct. Feb 10, 1998). Although the record does not establish whether Ebron received a copy of his PSR from the Circuit Court Clerk, Ebron's Sentencing Order explains that a PSR was created for him, and that it was "presented to the [Circuit] Court in the presence of the defendant who was fully advised of the contents of the report and a copy of said report was also delivered to counsel for the accused." Judgment 1, Commonwealth v. Ebron, No. F-7291 (Va. Cir. Ct. Dec. 16, 1985). Therefore, at the latest, Ebron was made aware of the PSR on December 16, 1985, the day judgment was entered against him. However, in his § 2254 Petition, Ebron does not describe how he contacted his attorney for help reviewing his PSR,[4] nor any other efforts he made in securing the document. See Petit v. Clarke, No. 3:15CV308, 2016 WL 1064538, at *3 (E.D. Va. Mar. 14, 2016) (explaining that habeas petitioner was not entitled to belated commencement because he "never indicate[d] that he made any

---

[4] In Part B.2.C the Court considers Ebron's assertion that his trial attorney "abandoned" him. (See Resp. 2.)

11

effort to obtain . . . his case file from counsel"). As Ebron appears to have taken only a couple of steps to discover the facts underlying his claims in the more than thirty years since judgment was entered against him, his "inaction is incompatible with a finding of due diligence." Wood v. Spencer, 487 F.3d 1, 5 (1st Cir. 2007) (citations omitted). Acting with reasonable diligence, Ebron could have discovered the factual predicate for his claims well before April 24, 1997. Accordingly, Ebron fails to demonstrate entitlement to a belated commencement of the limitations period.[5]

### c. Equitable Tolling

Petitions pursuant to 28 U.S.C. § 2254 are subject to equitable tolling. See Holland v. Florida, 560 U.S. 631, 645 (2010) (citations omitted). The Supreme Court has "made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649 (quoting Pace v.

---

[5] Ebron also alleges that Claim Two "is jurisdictional and cannot be subjected to time bars . . . ." (Resp. 5.) To the extent that Ebron suggests that claims asserting a void judgment for lack of jurisdiction are not subject to the federal statute of limitations pertaining to 28 U.S.C. § 2254 petitions, he is mistaken. "[T]he state court's jurisdiction vel non is a merits issue, not a jurisdictional issue, on federal habeas." Sherratt v. Friel, 275 F. App'x 763, 765, 766 n.1 (10th Cir. 2008) (concluding that claims challenging the state court's jurisdiction were subject to the federal statute of limitations); Franklin v. Stewart, 13 F. App'x 605, 606-07 (9th Cir. 2001).

DiGuglielmo, 544 U.S. 408, 418 (2005)). An inmate asserting equitable tolling "'bears a strong burden to show specific facts'" demonstrating that he fulfills both elements of the test. Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)). Generally, the petitioner is obliged to specify "'the steps he took to diligently pursue his federal claims.'" Id. at 930 (quoting Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998)).

For the reasons stated above, Ebron fails to demonstrate that he diligently sought to learn of the facts underlying his Claims One through Three. However, in his Response to Respondent's Motion to Dismiss, Ebron seemingly argues that he is entitled to equitable tolling because of his attorney's post-conviction conduct. Ebron asserts that his attorney "abandoned him without advising him of his right to appeal, nor any information regarding his statute of limitations for filing for state or federal post-conviction . . . relief." (Resp. 3.) Ebron further alleges that "he never received any discovery or evidence surrounding the crime before or after trial . . . He was represented by one attorney who advised him to plead guilty to avoid the death penalty and thereafter he received no further assistance."[6] (Id. at 7.)

---

[6] Respondent also asserts that Ebron has raised a claim of actual innocence by his repeated use of the phrase "miscarriage of justice." (Br. Supp. Mot. Dismiss 5.) However, "[i]n our

13

Attorney abandonment, in limited circumstances, can be egregious enough to constitute extraordinary circumstances that warrant equitable tolling. Maples v. Thomas, 565 U.S. 266, 281-82 (2012); Holland, 560 U.S. at 652. However, even in the presence of such egregious behavior, a habeas petitioner must still demonstrate that he acted with the requisite diligence necessary to warrant equitable tolling. See Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001).

In Ebron's case, his allegations that his attorney abandoned him are only vague and general. Further, Ebron's § 2254 Petition demonstrates that Ebron was not diligent in pursuing his rights, as he apparently claims he pled guilty to capital murder without knowing any of the evidence against him. Ebron provides no assurances that he attempted to contact his attorney to inquire about his post-conviction options, that his attorney ever denied him access to his PSR or other court documents, or that he was somehow affirmatively misled by his attorney. See Baxter v. Dir., Dep't of Corr., No. 1:11CV1259 (AJT/IDD), 2012 WL 12973536, at *4 (E.D. Va. Jan. 24, 2012) (explaining that "petitioner's barebones allegations of

---

collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent." United States v. Olano, 507 U.S. 725, 736 (1993) (citing Sawyer v. Whitley, 505 U.S. 333, 339-40 (1992)). In Ebron's case, he does not assert that he is actually innocent of the crimes of which he was convicted. Therefore, the Court declines to address a claim of actual innocence.

14

abandonment by his . . . attorney without any facts indicating diligence on behalf of the petitioner are not sufficient to warrant equitable tolling"); Phillips v. Thornton, No. 1:16CV49-FDW, 2016 WL 6803107, at *3-4 (W.D.N.C. Nov. 16, 2016) (concluding that habeas petitioner was not entitled to equitable tolling because even if he did not receive his requested case file from his attorney in 2001, he waited until 2013 to re-contact his attorney about the file), appeal dismissed, 677 F. App'x 137 (4th Cir. 2017). Moreover, to the extent that Ebron argues it, he is not entitled to equitable tolling simply because he did not know of his obligation to file a timely § 2254 petition. See Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (quoting Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999))). Therefore, Ebron's assertion that his attorney "abandoned" him without more fails to entitle his § 2254 Petition to equitable tolling.

### 3. Conclusion

For the foregoing reasons, it is RECOMMENDED that Claim Four be DENIED, and Claims One, Two, and Three be DISMISSED as barred by the statute of limitations. It is further RECOMMENDED that the Motion to Dismiss (ECF No. 11) be GRANTED and that the action be DISMISSED.

Ebron is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. See Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. See Carr v. Hutto, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is directed to send a copy of this Report and Recommendation to Ebron.

It is so ORDERED.

/s/ _____
Roderick C. Young
United States Magistrate Judge

Date: January 19, 2018
Richmond, Virginia